OB4EBAUP

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4              v.                        22 Cr. 155 (PAE)

5  RONALD BAUER,

6                                        Plea
                 Defendant.
7  ------------------------------x

8                                        New York, N.Y.
9                                        November 4, 2024
                                         12:00 p.m.
10

11 Before:

12                    HON. PAUL A. ENGELMAYER,

13                                        District Judge

14                         APPEARANCES

15 DAMIAN WILLIAMS
        United States Attorney for the
16      Southern District of New York
   BY:  MATTHEW RAFFI SHAHABIAN
17      Assistant United States Attorney

18 AARON KATZ LAW LLC
        Attorney for Defendant
19 BY:  AARON KATZ

20 Also Present:

21 JOSEPH STRAWMAN, FBI Special Agent

22

23

24

25

OB4EBAUP

1          (Case called)

2          MR. SHAHABIAN:  Good afternoon, your Honor.

3          Matthew Shahabian appearing for the government, and

4   with me at counsel table is FBI special agent Joseph Strawman.

5          THE COURT:  Joseph ——

6          MR. SHAHABIAN:  Strawman.

7          THE COURT:  Very good.  Good afternoon, AUSA

8   Shahabian, and good afternoon, Agent Strawman.

9          You may be seated.

10          MR. KATZ:  Good afternoon, your Honor.

11          Aaron Katz for Ronald Bauer, and Mr. Bauer is to the

12   right of me.

13          THE COURT:  Good afternoon, Mr. Katz, and good

14   afternoon, Mr. Bauer.

15          Mr. Katz, I have been informed that your client wishes

16   today to plead guilty to Count One of the indictment in this

17   case pursuant to a plea agreement, is that correct?

18          MR. KATZ:  That's correct, your Honor.

19          THE COURT:  Let's just move a microphone as well next

20   to Mr. Bauer.  Just move that microphone down so you each have

21   a mic.  Thank you.

22          Mr. Bauer, is that correct?

23          THE DEFENDANT:  Yes, that's correct, your Honor.

24          THE COURT:  Before I accept your guilty plea, I'm

25   going to ask you certain questions so that I can establish to

OB4EBAUP

1   my satisfaction that you wish to plead guilty because you are

2   guilty and not for some other reason.  If you don't understand

3   any of my questions or you'd like a further opportunity to

4   consult with Mr. Katz, will you please let me know?

5               THE DEFENDANT:  Yes.  Yes, your Honor.

6               THE COURT:  All right.  Are you able to speak and

7   understand English?

8               THE DEFENDANT:  Yes, I am, your Honor.

9               THE COURT:  Mr. Smallman, would you kindly place the

10  defendant under oath?

11              (Defendant sworn)

12              THE COURT:  Do you understand that you're now under

13  oath and that if you answer any of my questions falsely, your

14  answers to my questions may be used against you in another

15  prosecution for perjury?

16              THE DEFENDANT:  Yes, I do, your Honor.

17              THE COURT:  Why don't you move the mic a little

18  closer.  You're speaking softly.

19              THE DEFENDANT:  Yes, I do, your Honor.

20              THE COURT:  All right.  What is your full name?

21              THE DEFENDANT:  Ronald Bauer.

22              THE COURT:  How old are you?

23              THE DEFENDANT:  Forty-nine years old.

24              THE COURT:  How far did you go in school?

25              THE DEFENDANT:  I have a master's degree.

OB4EBAUP

1          THE COURT:  In what?

2          THE DEFENDANT:  Master's of business administration.

3          THE COURT:  Have you ever been treated or hospitalized

4    for any mental illness?

5          THE DEFENDANT:  I've not been hospitalized.  I've had

6    evaluations and met with psychiatrists but not had any

7    hospitalization, no, your Honor.

8          THE COURT:  Okay.  Are you now under the care or have

9    you recently been under the care of a doctor or psychiatrist?

10          THE DEFENDANT:  Yes, I have, your Honor.

11          THE COURT:  All right.  I'm probing this purely to

12    make sure that you are mentally clear enough to undertake this

13    allocution, and I don't mean to pry for any other reason.  But,

14    briefly, what is the nature of the care that you have right

15    now?

16          THE DEFENDANT:  It's evaluation for various conditions

17    that I would prefer not to disclose publicly here in the

18    courtroom.  Various conditions.  I hope they do not affect my

19    judgment.  I don't think they do, no.

20          THE COURT:  All right.  I need to be confident that

21    they don't affect your judgment.  I think we can get through

22    this without your identifying the conditions.

23          Is there anything about the conditions that you are

24    being treated for that affects the clarity of your thinking?

25          THE DEFENDANT:  I don't think so, no, your Honor.

OB4EBAUP

| | |
|---|---|
| 1 | THE COURT:  As you go about your daily life, is there |
| 2 | anything about the conditions you're being treated for that |
| 3 | affects your ability to make ordinary decisions day to day? |
| 4 | THE DEFENDANT:  No, your Honor. |
| 5 | THE COURT:  All right.  Is your mind clear today? |
| 6 | THE DEFENDANT:  My mind is clear today, yes, sir. |
| 7 | THE COURT:  Do you understand what's happening in this |
| 8 | proceeding? |
| 9 | THE DEFENDANT:  I understand 100 percent, your Honor. |
| 10 | THE COURT:  Mr. Katz, you have spent a good deal of |
| 11 | time with your client, have you not? |
| 12 | MR. KATZ:  I have, your Honor. |
| 13 | THE COURT:  What is your assessment about the clarity |
| 14 | of his thinking? |
| 15 | MR. KATZ:  I believe his clarity is perfect, your |
| 16 | Honor. |
| 17 | THE COURT:  All right.  With respect to the medical |
| 18 | conditions your client is being treated for, I take it you are |
| 19 | familiar with what those are. |
| 20 | MR. KATZ:  I am, your Honor. |
| 21 | THE COURT:  And are you 100 percent confident that |
| 22 | none of that is in any way adversely affecting your client's |
| 23 | clarity of thought? |
| 24 | MR. KATZ:  I am 100 percent confident, your Honor. |
| 25 | THE COURT:  Okay. |

OB4EBAUP

```
 1              Mr. Shahabian, do you have any doubt as to the
 2    defendant's competence to plead at this time?
 3              MR. SHAHABIAN:  No, your Honor.
 4              THE COURT:  Do you believe there's any further inquiry
 5    I need to make in this area, Mr. Shahabian?
 6              MR. SHAHABIAN:  No, your Honor.
 7              THE COURT:  All right.
 8              Mr. Katz, I take the same?
 9              MR. KATZ:  I agree.
10              THE COURT:  All right.  Look, based upon Mr. Bauer's
11    responses to my questions, based on his demeanor as he appears
12    before me, and based on counsel's independent assessments,
13    especially that of Mr. Katz who has spent a lot of time with
14    his client, I find that Mr. Bauer is competent to enter a plea
15    of guilty at this time.
16              I should have asked you this question, although it's
17    sort of implicit.  In the past 24 hours, have you taken any
18    drugs, medicine or pills, or drunk any alcoholic beverages?
19              THE DEFENDANT:  No, your Honor.
20              THE COURT:  All right.  Have you had a sufficient
21    opportunity to discuss your case with your attorney?
22              THE DEFENDANT:  Yes, your Honor.
23              THE COURT:  Have you had a sufficient opportunity to
24    discuss the particular charge to which you intend to plead
25    guilty, any possible defenses to that charge, and the
```

OB4EBAUP

1    consequences of entering a plea of guilty?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Are you satisfied with your attorney's

4    representation of you, including in connection with reaching a

5    plea agreement?

6              THE DEFENDANT:  Yes, your Honor, I am.

7              THE COURT:  All right.  I'm now going to explain

8    certain constitutional rights that you have.  You'll be giving

9    up these rights if you enter a plea of guilty.

10             Under the Constitution and laws of the United States,

11   you're entitled to a speedy and a public trial by a jury on the

12   charges contained in the indictment.  Do you understand that?

13             THE DEFENDANT:  I do, your Honor.

14             THE COURT:  At that trial, you would be presumed to be

15   innocent, and the government would be required to prove you

16   guilty by competent evidence and beyond a reasonable doubt

17   before you could be found guilty.  You would not have to prove

18   that you were innocent.  And a jury of 12 people would have to

19   agree unanimously that you were guilty.  Do you understand

20   that?

21             THE DEFENDANT:  I do, your Honor.

22             THE COURT:  At that trial and at every stage of your

23   case, you would be entitled to be represented by an attorney,

24   and if you could not afford one, one would be appointed to

25   represent you free of charge.  Do you understand that?

OB4EBAUP

1          THE DEFENDANT:  I do, your Honor.

2          THE COURT:  During a trial, the witnesses for the

3    government would have to come to court and testify in your

4    presence, and your lawyer could cross-examine the witnesses for

5    the government, object to evidence offered by the government,

6    and if you desired, issue subpoenas, offer evidence, and compel

7    witnesses to testify on your behalf.  Do you understand that?

8          THE DEFENDANT:  I do, your Honor.

9          THE COURT:  At a trial, although you would have the

10   right to testify if you chose to do so, you would also have the

11   right not to testify, and no inference or suggestion of guilt

12   could be drawn from the fact that you did not testify if that

13   was what you chose to do.  Do you understand that?

14         THE DEFENDANT:  I do, your Honor.

15         THE COURT:  At trial, the government would have to

16   prove each and every part, or element, of a charge beyond a

17   reasonable doubt for you to be convicted of that charge.  Do

18   you understand that?

19         THE DEFENDANT:  I do, your Honor.

20         THE COURT:  Do you understand that if you were

21   convicted at a trial, you would then have the right to appeal

22   that guilty verdict?

23         THE DEFENDANT:  I do, your Honor.

24         THE COURT:  Even at this time, right now, even as

25   you're in the process of entering this guilty plea, you have

OB4EBAUP

1    the right to change your mind, plead not guilty, and go to

2    trial.  Do you understand that?

3            THE DEFENDANT:  I do, your Honor.

4            THE COURT:  If you plead guilty and I accept your

5    plea, you'll give up your right to a trial and the other rights

6    that I have just described.  There will be no trial, and I will

7    enter a judgment of guilty and sentence you on the basis of

8    your guilty plea after considering the submissions relating to

9    sentencing that I receive from you, your lawyer, and the

10   government, as well as a presentence report prepared by the

11   probation department.  Do you understand that?

12           THE DEFENDANT:  I do, your Honor.

13           THE COURT:  If you plead guilty, you'll also have to

14   give up your right not to incriminate yourself because I will

15   ask you questions about what you did in order to satisfy myself

16   that you are guilty as charged.  Do you understand that?

17           THE DEFENDANT:  I do, your Honor.

18           THE COURT:  Mr. Bauer, have you received a copy of the

19   indictment containing the charges against you?

20           THE DEFENDANT:  I have, your Honor.

21           THE COURT:  Have you read it?

22           THE DEFENDANT:  I have, your Honor.

23           THE COURT:  Have you discussed it in full with your

24   attorney?

25           THE DEFENDANT:  I have, your Honor.

OB4EBAUP

| | |
|---|---|
| 1 | THE COURT:  And do you understand that you're charged, |
| 2 | in Count One, with conspiracy to commit securities fraud, in |
| 3 | violation of Title 18 U.S.C. Section 371? |
| 4 | THE DEFENDANT:  I do, your Honor. |
| 5 | THE COURT:  Mr. Shahabian, would you please set out |
| 6 | the elements of that offense? |
| 7 | MR. SHAHABIAN:  Yes, your Honor. |
| 8 | The elements of the offense charged in Count One are, |
| 9 | first, the existence of a conspiracy to violate the laws of the |
| 10 | United States; second, the defendant's knowing and willful |
| 11 | agreement to join the conspiracy; and third, that a member of |
| 12 | the conspiracy committed an overt act in furtherance of the |
| 13 | conspiracy. |
| 14 | In this case, the object of the conspiracy charged in |
| 15 | Count One was securities fraud, which, in turn, has three |
| 16 | elements that the conspirators agreed to:  First, in connection |
| 17 | with the purchase or sale of a stock to do any one or more of |
| 18 | the following:  One, employ a device, scheme, or artifice to |
| 19 | defraud; two, make an untrue statement of a material fact or |
| 20 | omit to state a material fact which made what was said under |
| 21 | the circumstances misleading; or three, engage in an act, |
| 22 | practice, or course of business that operates, or would |
| 23 | operate, as a fraud or deceit upon a purchaser or seller. |
| 24 | Second, to act willfully, knowingly, and with the |
| 25 | intent to defraud.  And third, to knowingly use or cause to be |

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

OB4EBAUP

```
1    used any means or instruments of transportation or

2    communication in interstate commerce or use of the mails in

3    furtherance of the fraudulent conduct.  The government would

4    also have to prove venue in this district by a preponderance of

5    the evidence.

6                 THE COURT:  All right.  Thank you.

7                 Mr. Katz, do you agree with the summary of the

8    elements that was just set out?

9                 MR. KATZ:  I do, your Honor.

10                THE COURT:  All right.  And, Mr. Bauer, did you hear

11   and understand the government as Mr. Shahabian has set out the

12   elements of the offense?

13                THE DEFENDANT:  I do, your Honor.

14                THE COURT:  Do you understand that if you were to go

15   to trial, the government would have to prove each of those

16   elements beyond a reasonable doubt?

17                THE DEFENDANT:  Yes, I do, your Honor.

18                THE COURT:  Do you understand as well that the

19   government would have to prove that venue was proper in this

20   district, which includes, among other places, Manhattan and the

21   Bronx, but it would have to do that by a preponderance of the

22   evidence, not beyond a reasonable doubt?

23                THE DEFENDANT:  Yes, your Honor.

24                THE COURT:  All right.  Do you understand that the

25   maximum possible penalty for this crime, in terms of
```

OB4EBAUP

1   imprisonment, is five years' imprisonment?

2           THE DEFENDANT:  Yes, I do, your Honor.

3           THE COURT:  Do you understand that the maximum fine

4   for this offense may reach the greatest of $250,000, twice the

5   monetary gain you derived, or twice the monetary loss to people

6   other than you resulting from the offense?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  Do you understand that for pleading guilty

9   to this offense, you may receive a term of up to three years of

10  supervised release?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Supervised release means that you will be

13  subject to monitoring when you are released from prison.  There

14  are terms of supervised release with which a person must

15  comply.  If you don't comply with them, you could be returned

16  to prison without a jury trial for all or part of the term of

17  supervised release imposed by the Court.  Under those

18  circumstances, you would not be given any credit towards that

19  term for the time you served in prison as a result of your

20  sentence for this crime, nor would you necessarily be given any

21  credit towards that term for any time you had spent on

22  post-release supervision.  Do you understand that?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  For pleading guilty to this offense,

25  you'll be required to pay a mandatory $100 special assessment.

OB4EBAUP

1    Do you understand that?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  For pleading guilty to this offense, you

4    may also be compelled to forfeit any and all property

5    constituting and derived from proceeds obtained by your

6    criminal conduct.  Do you understand that?

7              THE DEFENDANT:  I do, your Honor.

8              THE COURT:  And, government, is restitution available

9    for this offense?

10             MR. SHAHABIAN:  It is, but the government does not

11   intend to seek restitution.

12             THE COURT:  Okay.  So, no need to allocute the

13   defendant about that.

14             MR. SHAHABIAN:  That's correct, your Honor.

15             THE COURT:  All right.

16             Do you understand that if I accept your guilty plea

17   and adjudge you guilty, that may deprive you of valuable civil

18   rights, such as the right to vote, the right to hold public

19   office, the right to serve on a jury, and the right to possess

20   any kind of firearm?

21             THE DEFENDANT:  I'm not an American, your Honor, so I

22   don't have those rights anyways.

23             THE COURT:  Okay.  Well, do you understand ——

24             THE DEFENDANT:  But I understand that, but they don't

25   pertain to me because I'm not American.

OB4EBAUP

```
1        THE COURT:  Well, I think that applies to some of
2   those rights, what you just said, but not all of them.  For
3   example, the firearms point I'm not sure is derivative of
4   citizenship.  The relevant point is do you ——
5        THE DEFENDANT:  I understand yes, sir.  Yes, your
6   Honor, I do.
7        THE COURT:  —— do you understand that if I accept your
8   guilty plea and adjudge you guilty, that may deprive you of the
9   range of civil rights that I just described?
10        THE DEFENDANT:  Yes, your Honor, I understand.
11        THE COURT:  All right.  Now, my next question was
12   about citizenship.  You are not, I take it, an American
13   citizen.
14        THE DEFENDANT:  I'm Canadian and British, your Honor.
15        THE COURT:  Do you understand that, as a result of
16   your guilty plea, there may be various adverse affects on your
17   immigration status, including further detention, following
18   completion of your sentence?
19        THE DEFENDANT:  Yes, I understand that, your Honor.
20        THE COURT:  And do you understand that, as a result of
21   your guilty plea, you may be removed from the United States,
22   denied citizenship, denied admission to the United States in
23   the future, and it may be difficult, if not impossible, if you
24   were to seek citizenship in the future, to get it as a result
25   of the guilty plea?  Do you understand that?
```

OB4EBAUP

1              THE DEFENDANT:  I do, your Honor.

2              THE COURT:  Have you discussed the possible

3    immigration consequences of your plea with your attorney?

4              THE DEFENDANT:  Yes, I have, your Honor.

5              THE COURT:  Let me pause at this point.  There has

6    been, as counsel are aware, a decision out of the Second

7    Circuit literally last week involving the plea allocutions for

8    naturalized citizens.  That is not implicated here, I just want

9    to make sure before we move on that neither of you sees any

10   need for any inquiry here insofar as that area is in some

11   ferment.

12             MR. SHAHABIAN:  No, your Honor.  Thank you.

13             MR. KATZ:  Same.  I agree, your Honor.

14             THE COURT:  All right.

15             Under current law, there are sentencing guidelines, as

16   well as other factors set forth in the sentencing statutes,

17   that judges must consider in determining a sentence.  Do you

18   understand that?

19             THE DEFENDANT:  Yes, I do, your Honor.

20             THE COURT:  Just one moment.

21             (Pause)

22             THE COURT:  Have you spoken with your attorney about

23   the sentencing guidelines and those other factors?

24             THE DEFENDANT:  Yes, I have, your Honor.

25             THE COURT:  Do you understand that the Court will not

OB4EBAUP

1    be able to determine the guideline range that will form one

2    part of my determination of what a reasonable sentence will be

3    in your case until after a presentence report has been prepared

4    and until after you and your attorney and the government have

5    all had an opportunity to challenge any of the facts reported

6    in the presentence report by the probation department?

7              THE DEFENDANT:  Yes, I do, your Honor.

8              THE COURT:  Do you understand that even though the

9    parties in the plea agreement have agreed that, but for the

10   statutory maximum, the guideline range here would be 97 to

11   121 months' imprisonment, but that in light of the statutory

12   maximum, the guideline range is 60 months' imprisonment?  Do

13   you understand that the parties' agreement about all of that is

14   not binding on the probation department and is not binding on

15   the Court?

16             THE DEFENDANT:  Yes, I understand that, your Honor.

17             THE COURT:  All right.  And do you understand that

18   even after the Court has determined what guideline range

19   applies to your case, the Court has the discretion, under the

20   current law, to impose a sentence that is higher or lower than

21   the one suggested by the guidelines, provided that, of course,

22   the Court not impose a sentence above the statutory maximum?

23   Do you understand that?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Do you understand that if your attorney or

OB4EBAUP

1    anyone else has attempted to predict what your sentence will

2    be, their prediction would be wrong?  No one —— not your

3    attorney, not the government's attorney, no one —— can give you

4    any assurance of what your sentence will be because I'm going

5    to decide your sentence, and I'm not going to do that now, and

6    I really can't do that now; instead, I'm going to wait until I

7    receive a presentence report prepared by the probation

8    department, I'm going to wait until I've received the parties'

9    sentencing submissions, which I know will be very thoughtful,

10    I'm going to review all of those carefully, I'm going to do my

11    own independent calculation of what the sentencing guidelines

12    recommend in your case, most of all, I'm going to determine

13    what a just and a reasonable sentence is for you based on all

14    of the factors contained in the sentencing statute, which is

15    known, for short, as Section 3553(a).  Do you understand all of

16    that?

17            THE DEFENDANT:  I understand that very clearly, your

18    Honor.

19            THE COURT:  Have you discussed these issues and the

20    overall sentencing process with your attorney?

21            THE DEFENDANT:  I have, your Honor, yes.

22            THE COURT:  Even if your sentence is different from

23    what your attorney or anyone else has told you it might be,

24    even if it's different from what you expect, you would still be

25    bound by your guilty plea and you would not be allowed withdraw

OB4EBAUP

1  your plea of guilty.  Do you understand that?

2          THE DEFENDANT:  I understand that, your Honor.

3          THE COURT:  Has anyone threatened you or anyone else

4  or forced you in any way to plead guilty?

5          THE DEFENDANT:  No, your Honor.

6          THE COURT:  Has there been a plea agreement entered

7  into between you and your counsel and counsel for the

8  government?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  All right.  Counsel have handed up a

11  signed plea agreement bearing the typed date of

12  October 17, 2024.

13          Mr. Shahabian, I see an electronic slash signature

14  that appears to be —— it's not clear which of the four

15  aforementioned names it is, but has that been signed by one of

16  those AUSAs?

17          MR. SHAHABIAN:  Yes, your Honor.  I'll take

18  responsibility.

19          THE COURT:  Okay.  Is that intended to be your

20  signature there?

21          MR. SHAHABIAN:  Yes, your Honor.

22          THE COURT:  All right.  Very good.  And the same

23  question on the approval line.  It appears to have the

24  electronic signature of either Scott Hartman or Matthew

25  Podolsky, the chiefs of the Securities and Commodities Fraud

OB4EBAUP

1    Task Force.  Is that meant to be their signature?

2                MR. SHAHABIAN:  Yes, your Honor.

3                THE COURT:  All right.  Going forward, may I suggest

4    that at least the name of the individual be presented rather

5    than the backslash S?  It's actually impossible, on reading

6    this, to know what human being is taking responsibility.

7                MR. SHAHABIAN:  Yes, your Honor.

8                THE COURT:  So that we have a clear record in the

9    remote chance of some appellate issue on this, you've taken

10   responsibility for the first line.  Which of the unit chiefs is

11   the electronic signatory on the second line?

12               MR. SHAHABIAN:  Scott Hartman, your Honor.

13               THE COURT:  Thank you.

14               Mr. Katz, I see here your signature, dated October 19.

15   Is that your signature?

16               THE DEFENDANT:  Yes, it is, your Honor.

17               THE COURT:  Mr. Bauer, I see your signature, dated

18   October 20.  Is that your signature?

19               THE DEFENDANT:  Yes, your Honor.

20               THE COURT:  Did you read this agreement, Mr. Bauer,

21   before you signed it?

22               THE DEFENDANT:  Yes, your Honor, I read it many times.

23               THE COURT:  Did you discuss it with your attorney

24   before you signed it?

25               THE DEFENDANT:  We discussed it on many occasions,

OB4EBAUP

1    yes, your Honor.

2              THE COURT:  Did you believe you understood the

3    agreement at the time you signed it?

4              THE DEFENDANT:  I understood the agreement at the time

5    I signed it, and I understand it today as well.

6              THE COURT:  Good.  Did you willingly sign the

7    agreement?

8              I need to ask you these questions.

9              THE DEFENDANT:  I willingly signed the agreement, yes.

10             THE COURT:  Did anybody force you to sign it?

11             THE DEFENDANT:  No one forced me to sign it.

12             THE COURT:  Do you have any agreement with the

13    government about your plea or your sentence that has been

14    omitted, that has been left out, of this written plea

15    agreement?

16             THE DEFENDANT:  No, I do not, your Honor.

17             THE COURT:  Mr. Shahabian, would you please summarize

18    the material terms of the plea agreement.

19             MR. SHAHABIAN:  Yes, your Honor.

20             The defendant agrees to plead guilty to Count One of

21    the indictment, charging him with a conspiracy to commit

22    securities fraud.  He is also agreeing to a forfeiture judgment

23    in the amount of approximately $4.37 million pursuant to the

24    terms of the consent order of forfeiture attached as Exhibit A

25    to the plea agreement.

OB4EBAUP

1        The parties agree that the guidelines range would be

2  97 to 121 months' imprisonment, but because the statutory

3  maximum for Count One is 60 months, that is the guidelines

4  range.  The parties agree not to seek departures but are free

5  to argue for variances under the Section 3553(a) factors.

6        The government is agreeing not to seek restitution and

7  to recommend to the Court not to impose a fine, given the

8  defendant's family medical condition as outlined in the plea

9  agreement.  The government is agreeing to not oppose his

10  request to delay his surrender date until July 1 of 2026.

11        The defendant is agreeing not to appeal his sentence

12  so long as it falls within the stipulated guidelines sentence.

13  And similarly, the government will not appeal any sentence at

14  or above the stipulated guidelines sentence.  The same is true

15  with respect to the monetary consequences outlined in the plea

16  agreement, and the government agrees not to oppose the

17  defendant's request to transfer his sentence pursuant to the

18  International Prisoner Transfer Program so long as he has not

19  breached the plea agreement.

20        THE COURT:  All right.  Thank you.  Let me just ask

21  several questions.  And, by the way, I'm marking the plea

22  agreement that we've referred to as Government Exhibit 1.

23        Mr. Shahabian, there's a reference to an Exhibit A,

24  which is, I take it, the consent preliminary order of

25  forfeiture.

OB4EBAUP

```
 1              MR. SHAHABIAN:  Correct, your Honor.

 2              THE COURT:  That is your signature on the last date,

 3    dated October the 20th?

 4              MR. SHAHABIAN:  Yes, your Honor.

 5              THE COURT:  Mr. Katz, is this your signature, also

 6    dated October 20th, on the consent preliminary order of

 7    forfeiture?

 8              MR. KATZ:  It is, your Honor.

 9              THE COURT:  And, Mr. Bauer, is that your signature on

10    the same document?

11              THE DEFENDANT:  Yes, your Honor.

12              THE COURT:  All right.  I'm going to sign that

13    agreement and it'll be docketed today.

14              Continuing on, there's an Exhibit B to the plea

15    agreement.  I may have missed something, but I don't see where

16    Exhibit B is cited in the agreement, but it appears,

17    essentially, to be a detailed factual agreement as to the

18    agreed-upon facts supporting the guilty plea.  I just didn't

19    see a reference to it in the agreement.  Just explain to me

20    what function it serves.

21              MR. SHAHABIAN:  Yes, your Honor.  It's on page two of

22    the plea agreement.  It's the second full paragraph:  The

23    parties agree, for the purposes of sentencing, in addition to

24    allocuting to the facts that would support an allocution of the

25    elements of the offense, the defendant will admit the factual
```

OB4EBAUP

1    statements appended as Exhibit B.

2            THE COURT:  So, this will, essentially, effectively be

3    reprised as all or part of the offense conduct in the PSR, in

4    the presentence report.

5            MR. SHAHABIAN:  Correct, your Honor.

6            THE COURT:  All right.  Very helpful.

7            Tell me about just a couple of unusual features of the

8    agreement, which I just want to make sure I understand.  The

9    surrender date.  The agreement doesn't bind the Court but it

10   binds the government not to oppose an application for a

11   surrender date of July 1, 2026.

12           MR. SHAHABIAN:  Yes, your Honor.  The parties have had

13   extensive discussions about the defendant's family medical

14   condition, his wife in particular.  Our understanding is, given

15   her condition, and I'm being a little vague to not put the

16   public health details of another person on the record, but that

17   she has a serious medical condition that her neurologist

18   anticipates surgery for that condition, and that there are

19   various steps that need to be taken before that surgery could

20   be scheduled, which is why the plea agreement notes an

21   anticipated surgery date of June of next year, and that the

22   recovery timeline for that type of surgery, the most prominent

23   side effects are noticeable in the first year after the

24   surgery, which is when she would need the most support.  So,

25   given that representation from the defendant's wife's medical

OB4EBAUP

1    doctor, the government has agreed not to oppose a request to

2    delay the surrender date until July 1 of 2026, at which point

3    the representation from the doctor is that is when we would

4    expect the most serious side effects.  It's not a guarantee

5    either way, but that is also why the government has included

6    that it does not anticipate consenting to any extension beyond

7    that such that if the medical condition changes for whatever

8    reason, this is also enough time for the defendant to make care

9    arrangements for his family.

10         THE COURT:  May I ask you, supposing the Court goes

11   along with the very thoughtful recommendation you've agreed

12   with, would the defendant then be, in between sentencing and

13   surrender, under the supervision of the Pretrial Services

14   department?  In other words, none of that time would count

15   towards his supervised release term that would follow a term of

16   imprisonment, it would be just an extension of the pretrial

17   regime.

18         MR. SHAHABIAN:  That's correct, your Honor.

19         THE COURT:  And the other unusual feature involves the

20   transfer.  Can you explain how that works?  I don't think I've

21   seen that before.

22         MR. SHAHABIAN:  Yes, your Honor.

23         There are various treaties that govern when a citizen

24   of another country serves prison time in this country.  Certain

25   treaties allow the prisoner to apply to serve all or part of

OB4EBAUP

 1  their sentence in their home country.  My understanding is that

 2  the defendant intends to apply to transfer to serve part of his

 3  sentence in his home country of the United Kingdom.  It's not

 4  within this office's power to consent to such an application,

 5  those applications are handled by the Department of Justice's

 6  Office of International Affairs; however, as part of that

 7  process, OIA will ask for this office's position on a treaty

 8  transfer application.  And given the various family

 9  circumstances that I've already started outlining for the

10  Court, the parties discussed whether the government would not

11  oppose an application to transfer part of the service of the

12  sentence to the UK.  We discussed internally and have agreed in

13  the plea agreement that so long as the defendant complies with

14  the plea agreement, we will not oppose; however, it also makes

15  clear that, ultimately, it's not this office's decision, it's

16  up to the Office of International Affairs.

17          THE COURT:  And, again, I haven't seen the issue

18  before.  But your understanding is that the Court does not have

19  any role in that.  A recommendation might or might not be given

20  some weight or attention, but, at the end of the day, it's an

21  executive branch determination.

22          MR. SHAHABIAN:  That's correct, your Honor.

23          THE COURT:  All right.  Thank you.  Very helpful.

24          MR. KATZ:  Your Honor, just one brief correction.

25          THE COURT:  Yes.

OB4EBAUP

1          MR. KATZ:  I think under the Treaty Transfer Program,

2     and I don't know if it's the terms of the treaty or just the

3     way DOJ applies the treaty, but there has to be a minimum

4     amount of time served in American prison before the prisoner

5     becomes, essentially, treaty transfer eligible.  Mr. Bauer's

6     telling me six to nine months.  And like Mr. Shahabian said,

7     it's discretionary on DOJ.  I think the Court can make some

8     sort of recommendation in its sentencing judgment about whether

9     a treaty transfer would be in the interests of justice, but,

10    obviously, we can come to that bridge when we get to

11    sentencing.

12          THE COURT:  Okay.  Very helpful.

13          Mr. Shahabian, given the timetable here, there's no

14    agreement, I take it, as to a recommendation as to when the

15    sentencing proceeding take place.

16          MR. SHAHABIAN:  No, your Honor.  I understand Mr. Katz

17    has an application to extend slightly beyond the typical

18    90 days the Court sets, particularly in light of the financial

19    agreement that the parties have reached in the consent

20    preliminary order of forfeiture, where the defendant is going

21    to settle the forfeiture prior to sentencing, but I'll let

22    Mr. Katz make that application.

23          THE COURT:  But there's no agreement on that point.

24          MR. SHAHABIAN:  The government's not going to oppose

25    it.  It's not in the plea agreement, though.

OB4EBAUP

1          THE COURT:  Very good.  Thank you.

2          But first of all, Mr. Katz, subject to what you said a

3    moment ago, did you hear and understand Mr. Shahabian as he set

4    out not all but certain of the terms of the plea agreement?

5          MR. KATZ:  Yes.  I would just note for the record that

6    I would consider the reporting date issue to be one of the

7    material terms, understanding it's not binding on the Court.

8          THE COURT:  Reporting date issue.

9          MR. KATZ:  The July 1, 2026.  I forget right now if

10   Mr. Shahabian included that.

11         THE COURT:  He mentioned it while making it clear that

12   it's only an agreement as to the government's position as

13   opposed to what the Court may or may not do.

14         MR. KATZ:  Correct, yes.

15         THE COURT:  Okay.  All right.

16         And, Mr. Bauer, did you hear and understand the

17   exchange I had with Mr. Shahabian as to certain terms of the

18   plea agreement?

19         THE DEFENDANT:  Yes, your Honor, I understand.

20         THE COURT:  All right.  Let me just highlight a couple

21   of them for you.  To begin with, do you understand that under

22   the agreement, you're giving up your right to appeal or

23   otherwise challenge your sentence so long as I don't sentence

24   you to more than 60 months in prison?

25         THE DEFENDANT:  Yes, your Honor, I understand.

OB4EBAUP

1           THE COURT:  And do you understand that even though

2    there's an agreement between the parties under which the

3    government is not opposing a surrender date of July 1, 2026,

4    ultimately, that surrender date is up to the Court, not the

5    government?  Do you understand that?

6           THE DEFENDANT:  I understand that.

7           THE COURT:  I don't mean to scare you, I don't mean to

8    suggest any hostility to that, but, as a formal matter, it

9    simply isn't a determination I can make until I've received

10   everybody's sentencing submissions.  I want to make sure you

11   understand that I'm not bound by the parties' joint

12   recommendation, although I'm certain to give it a lot of

13   thoughtful attention for all the good reasons that

14   Mr. Shahabian has mentioned, but I just want to make you

15   understand I have the authority to impose an earlier surrender

16   date.

17          THE DEFENDANT:  I understand that, your Honor.

18          THE COURT:  Great.  And likewise, with respect to the

19   International Prisoner Transfer Treaty that was referred to, do

20   you understand that, at the end of the day, it will be up to,

21   according to the parties, an office within the Department of

22   Justice as to whether to authorize a transfer for some portion

23   of your prison sentence such that it's carried out in another

24   country?  Do you understand that?

25          THE DEFENDANT:  I'm not holding my breath on that.

OB4EBAUP

1    It's up to the BOP, and it's a very minimal chance that people

2    get it.  So, I understand it but I'm not holding out on it.

3              THE COURT:  Right.

4              THE DEFENDANT:  It wasn't a reason for the agreement.

5              THE COURT:  The important thing is that you understand

6    that whatever the position is that the government is taking

7    here, that doesn't bind the ultimate decision-maker.

8              THE DEFENDANT:  I understand, your Honor, yes.

9              THE COURT:  All right.  Has anyone made any promise or

10   done anything other than what's contained in the plea agreement

11   to induce you to plead guilty?

12             THE DEFENDANT:  No, your Honor.

13             THE COURT:  Has anyone made a promise to you as to

14   what your sentence will be?

15             THE DEFENDANT:  No, your Honor.

16             THE COURT:  All right.  And do you still wish to enter

17   a plea of guilty?

18             THE DEFENDANT:  Yes, I do, your Honor.

19             THE COURT:  All right.  We're up to the point now

20   where I'd like you to tell me, in your own words, what it is

21   that you did that makes you believe that you are guilty of the

22   charge in Count One of the indictment.

23             Before you do that, though, Mr. Katz, it looks like

24   your client is about to read from a written statement.  That's

25   fine.  I take it he's about to do that.

OB4EBAUP

1    MR. KATZ:  Correct, your Honor.  And I just want to

2    tell the Court I think he's a little nervous, which is why he's

3    reading it, but we've put a lot of thought and he's put a lot

4    of thought into his statement.

5    THE COURT:  That's totally fine.

6    Look, Mr. Bauer, more often than not, and particularly

7    in cases involving white-collar crimes, defendants do read from

8    statements, which is great.  It assures that there's precision,

9    and I think that's all to the good.  Here's the important thing

10    I just need to make sure:  Before you start to read, I want to

11    confirm that what you are about to read from is a document that

12    you have closely reviewed before this morning and you're

13    confident it's completely accurate.

14    THE DEFENDANT:  It's completely accurate, and I worked

15    on this myself and then with some guidance from my lawyer who

16    reviewed it, but I prepared this statement.

17    THE COURT:  All right.  I'm going to ask you when you

18    read, to read it nice and slowly and distinctly because people

19    tend to speed up without thinking about it when they are

20    reading.

21    THE DEFENDANT:  Can I remain seated?

22    THE COURT:  Of course.  Of course.  Go ahead.  The

23    floor is yours.

24    THE DEFENDANT:  The statements of facts attached to my

25    plea agreement accurately portrays the conduct that I engaged

OB4EBAUP

1   in, either on my own or together with my business partners.

2   Rather than read the entire statement of facts here today, I

3   have prepared a summary of my unlawful conduct that is

4   described in the statement of facts.

5          Between 2014 and ending in February 2017, my business

6   partners and I engaged in a conspiracy to commit securities

7   fraud with respect to seven companies that were publicly traded

8   on the over-the-counter market.  Six companies were Cantabio

9   Pharmaceuticals, a biotech company focused on therapeutic

10  treatments for Alzheimer's and Parkinson's, Vertice Oil and

11  Gas, an oil and gas exploration company focused on a project in

12  Utah, Steampunk Wizards, a video game development studio based

13  in Malta in Europe, Black Stallion Oil and Gas, an oil and gas

14  exploration company focused on the Bakken in northwest Montana,

15  PetroTerra, an oil and gas exploration company focused on west

16  central Utah, and Black River Petroleum, an oil and gas

17  exploration company focused on Tennessee.  The seventh company

18  was a technology company called Cyber Fort.

19         I originally agreed to work with two new partners who

20  I did not know and who were introduced to me by a mutually

21  known Swiss wealth manager, Blacklight.  But in early 2017,

22  because I was uncomfortable with their planned conduct, I chose

23  to end my involvement and I sold my entire position to those

24  two individuals in a private transaction for below my cost

25  basis in order to exit the scheme entirely.  This is when my

OB4EBAUP

1    unlawful conduct ultimately ended.

2            In early 207, I was remorseful, I was ashamed of

3    myself, and I was guilt-ridden.  I changed my behavior more

4    than five years before I was indicted and before I even knew

5    there was an investigation.  I changed my behavior because I

6    knew it was wrong.  This was not how I wanted to operate or

7    live my life.  I know this does not absolve me of any guilt or

8    change the unlawful conduct I committed, and this is why I am

9    accepting full responsibility today for my actions and why I

10   changed my plea before you today.  I know what I did was wrong,

11   and I accept responsibility.

12           For each company that I described a few moments ago,

13   my business partners and I acquired ownership of most of the

14   company's free trading shares.  Rather than hold the shares

15   solely in our own personal names or entities, we divided most

16   of the shares in the various nominee entities created and

17   managed by Blacklight at our direction.  Blacklight made sure

18   to divide up the shares so that no single nominee entity owned

19   more than five percent of the company's shares.  They did this

20   with our knowledge and agreement in order to avoid SEC 13(d)

21   reporting and disclosure requirements.

22           I knew that by not reporting and disclosing to the SEC

23   that my partners and I were the beneficial owners of nearly all

24   the company's free trading shares, we were concealing

25   information that investors might consider important in deciding

1    whether to purchase the company's shares on the market.

2            With respect to each company, my business partners and

3    I arranged promotional campaigns designed to encourage

4    investors to purchase shares on the market.  These promotional

5    campaigns were created from information on the companies'

6    websites and from their SEC filings.  We funded the creation of

7    electronic news articles as well as hard copy printed

8    brochures.  These materials were distributed to individuals

9    from mailing lists that the media brokers obtained from digital

10   marketing agencies for a fee.

11           Our hope was that the promotional campaigns would

12   cause investors to purchase shares on the market and, thereby,

13   increase the share price.  If the promotional campaign was

14   successful in doing so, which they were to varying degrees at

15   times, and also failed at other times, we sold a portion of our

16   shares into that buying.  The promotional materials, however,

17   did not disclose that my partners and I were the beneficial

18   owners of a large portion of the companies' free trading

19   shares, nor did they disclose that we planned to sell a

20   substantial portion of our shares if the price increased

21   because of the promotional materials, nor did they disclose

22   that the promotional campaign had been funded by shareholders.

23           My partners and I retained trading authority over our

24   shares and would instruct Blacklight when to sell shares out of

25   the nominee entities that held our shares.  There were a few

OB4EBAUP

```
 1   occasions when I instructed Blacklight to have a nominee entity
 2   purchase a small block of shares on the same day that our
 3   nominee entities were also selling shares.  There was no
 4   legitimate economic purpose for those match trades, and we knew
 5   that those trades would either set or help to set a market
 6   price for the shares.  When the nominees sold their shares, we
 7   instructed Blacklight to transfer the sales proceeds, less any
 8   management fees that we agreed to pay Blacklight, to bank
 9   accounts that we controlled.
10        I accept full responsibility for my actions and my
11   conduct, which is why I am changing my plea and pleading
12   guilty, as well as agreeing to the attached statement of facts
13   as part of my plea agreement.  I stand before you today
14   remorseful, full of guilt and sorrow for my conduct and
15   actions.  I want to make amends.  I want to continue to set a
16   positive example and continue to build trust in the community.
17   I am truly sorry for my past conduct and want to show you that
18   I am not only accepting responsibility today but I am deeply
19   remorseful for my actions both to you, your Honor, and to the
20   U.S. Attorney's Office, who I greatly appreciate for being
21   understanding of the difficult health circumstances in my
22   family.
23        THE COURT:  All right.  Thank you, Mr. Bauer.  Thank
24   you for all the time that it took to prepare that statement,
25   and it's also all to the good that you've agreed to the factual
```

OB4EBAUP

1  stipulation in Exhibit B, which helps assure mutual clarity as

2  to the facts.

3      Mr. Shahabian, the one thing that leaps off the page

4  from the account that Mr. Bauer just gave is his statement that

5  he withdrew from the partnership with his business partners

6  more than five years before the indictment.  What is the

7  limitations period that applies to this offense?

8      MR. SHAHABIAN:  I believe it's a six-year statute of

9  limitations, your Honor, given that it charges securities fraud

10  under Title 18.

11      THE COURT:  So it's not a five-year statute, it's a

12  six-year statute.

13      MR. SHAHABIAN:  That's my understanding, your Honor.

14  I'll confirm that.  I don't think there's a statute of

15  limitations problem, even with that allocution.  And if that's

16  an issue, we can ——

17      THE COURT:  Well, I want to just make sure that it

18  isn't an issue.

19      Mr. Katz, I imagine this is something you must have

20  looked at closely.  What is your perspective on the applicable

21  limitations period?

22      MR. KATZ:  Yes.  I believe 371 incorporates the

23  statute of limitations of the underlying object, which is six

24  years.  And then the government had identified, I think there

25  were, distribution of proceeds to other coconspirators that

OB4EBAUP

1    they would have argued extended the statute of limitations

2    anyways.  But it's a six-year statute.

3            THE COURT:  So, it's undisputed that an overt act was

4    taken within the last six years.  The six years before the

5    indictment was returned.

6            MR. KATZ:  Absolutely, your Honor, yes.

7            THE COURT:  Mr. Shahabian, just so we have a clear

8    record and there's not doubt about it, can you identify

9    something about the conspiracy that extended into the period

10   within six years of the return of the indictment?

11           MR. SHAHABIAN:  Yes, your Honor.  Just give me one

12   moment.

13           THE COURT:  Of course.

14           MR. KATZ:  I'm also happy to do that, your Honor.

15           THE COURT:  Go ahead, yes.  Please.  That may make it

16   more quick, Mr. Katz.

17           MR. KATZ:  So, one of them, for example, your Honor,

18   was the promotional materials for were Cantabio were

19   distributed in the summer of 2016, which is within the six-year

20   statute of limitations.  Also in Exhibit B, there's a reference

21   to, I believe, certain trading that occurred in —— I apologize,

22   your Honor.  The Cantabio is the clearest one, I think.  The

23   promotional materials were distributed throughout May and June

24   of 2016.

25           THE COURT:  And the indictment, I see, was publicly

OB4EBAUP

 1    filed on March 10 of 2022, so that would have been about

 2    five-and-three-quarters years before the indictment.

 3              MR. KATZ:  Right.  Correct.

 4              THE COURT:  Mr. Shahabian, are you in agreement that

 5    the events that Mr. Katz just described are acts in furtherance

 6    of the charged conspiracy that are within the statute of

 7    limitations period?

 8              MR. SHAHABIAN:  Yes, your Honor.

 9              THE COURT:  All right.  Anything you want to add on

10    this point?

11              MR. SHAHABIAN:  No, your Honor.  I think that's

12    sufficient.

13              THE COURT:  All right.  Very good.

14              I believe you covered this, but just in the interest

15    of due care, Mr. Bauer, when you did these acts, what you just

16    described to me in your lengthy statement, did you know that

17    what you were doing was wrong?

18              THE DEFENDANT:  When I was doing these acts, I thought

19    at the time that they were civil matters, but I understand that

20    they are wrong now and I accept that they're wrong and I know

21    that they are criminal acts.

22              THE COURT:  I want to focus on your state of mind at

23    the time at issue.  The question is, did you know that what you

24    were doing was wrong?

25              THE DEFENDANT:  Yes, I knew what I was doing was

OB4EBAUP

```
 1    wrong.  Yes, your Honor.

 2              THE COURT:  And did you know you were committing a

 3    crime?

 4              THE DEFENDANT:  Yes, your Honor, I did.

 5              THE COURT:  All right.

 6              Does government counsel agree that there's a

 7    sufficient factual predicate for a guilty plea?

 8              MR. SHAHABIAN:  Yes, your Honor, except for venue,

 9    which the government would proffer that several of the trades

10    that were executed as part of the conspiracy were executed by

11    custodian brokers based in Manhattan.  In addition, wires that

12    were sent in furtherance of the scheme passed through Manhattan

13    as well.

14              THE COURT:  Mr. Katz, do you agree with that

15    factually?

16              MR. KATZ:  I agree with that, yes.

17              THE COURT:  And, Mr. Bauer, you as well agree?

18              THE DEFENDANT:  I agree, your Honor, yes.

19              THE COURT:  With that then, anything further from the

20    government?  Do you agree that there's a sufficient factual

21    predicate?

22              MR. SHAHABIAN:  Yes, your Honor.

23              THE COURT:  And, Mr. Katz, do you agree that there's a

24    sufficient factual predicate for a guilty plea?

25              MR. KATZ:  Yes, your Honor.
```

OB4EBAUP

```
1          THE COURT:  Mr. Katz, do you know of any valid defense
2    that would prevail at trial or any reason why your client
3    should not be permitted to plead guilty?
4          MR. KATZ:  No, your Honor.
5          THE COURT:  Mr. Bauer, are you pleading guilty today
6    voluntarily and of your own free will and because you are, in
7    fact, guilty?
8          THE DEFENDANT:  Yes, your Honor, I am.
9          THE COURT:  Can government counsel represent that had
10   the case gone to trial, it had sufficient evidence of each
11   element to establish a conviction?
12         MR. SHAHABIAN:  Yes, your Honor.
13         THE COURT:  Mr. Bauer, because you've acknowledged
14   that you are, in fact, guilty as charged in Count One of the
15   indictment, because I'm satisfied that you know of your rights,
16   including your right to go to trial, because I'm satisfied that
17   you're aware of the consequences of your plea, including the
18   sentence that may be imposed, and because I find that you're
19   voluntarily pleading guilty, I accept your guilty plea and
20   enter a judgment of guilty on the one count to which you've
21   pled guilty.
22         Before we move onto the discussion of the next step in
23   the case, Mr. Smallman rightly points out that it would be of
24   assistance to the court reporter for her to have a copy of the
25   written allocution, particularly insofar as there are a number
```

OB4EBAUP

 1    of proper names referenced.

 2            All right.  With that, Mr. Bauer, the next step in

 3    your case will involve the sentencing process.  I want you to

 4    pay close attention to what I'm about to say.  The probation

 5    department is going to want to interview you in connection with

 6    the presentence report that it will prepare.  If you choose to

 7    speak with the probation department, please make sure anything

 8    you say to them is truthful and accurate.  I read those reports

 9    very carefully.  And along with the parties' sentencing

10    submissions and the materials attached to the sentencing

11    submissions, what's in the presentence report is very important

12    to me in determining what a just and a reasonable sentence is

13    in the particular case.

14            You and your counsel have a right to examine the

15    report and to comment on it at the time of sentencing.  I urge

16    you to read it carefully and to discuss it with Mr. Katz before

17    sentencing.  If there are any mistakes in the report, please

18    point them out to Mr. Katz so that he can bring them to my

19    attention before sentencing.  Will you agree to that do?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  Mr. Katz, I think it's implicit in what's

22    been covered before.  You are not seeking an expedited sentence

23    here, correct?

24            MR. KATZ:  That's correct, your Honor.

25            THE COURT:  Mr. Katz, ordinarily, were we on the usual

OB4EBAUP

schedule, I would be scheduling sentencing for mid February,
that would be about three-and-a-half months from now.  I gather
from something that Mr. Shahabian said you may be seeking a
somewhat later date?

        MR. KATZ:  Yes, your Honor.  And since our last
conference, which I think was on October 5, the parties put a
significant amount of thought and care into these terms,
including the forfeiture term.  $1 million is sort of the
amount that the government is agreeing will satisfy the
forfeiture amount here, so a payment of $1 million.

        THE COURT:  Wait.  But forfeiture amount, I thought,
was over $4 million.

        MR. KATZ:  Correct.  And the government, in this
consent order, is deeming that forfeiture amount to be
satisfied by a payment of $1 million.  And Mr. Shahabian, I
think, can talk through the forfeiture details probably more
intelligently than I can because I'm not a forfeiture
specialist, but the parties have agreed that if Mr. Bauer makes
a payment of $1 million to that $4.3 million forfeiture amount,
the forfeiture will be deemed satisfied by that payment of
$1 million.

        THE COURT:  Mr. Shahabian, explain how that can be.

        MR. SHAHABIAN:  Yes, your Honor.

        The government can settle a forfeiture amount and take
a payment as full satisfaction of the judgment.  It's something

OB4EBAUP

1    this office will do in the interest of getting finality and

2    assets sooner as opposed to expending resources trying to hunt

3    down assets and trying to collect on a full money judgment.

4    And so in this case, the parties, after exchanging financial

5    affidavits and financial information that showed the

6    defendant's current financial condition and ability to pay, as

7    well as taking into account the interests of justice in

8    actually obtaining cash as opposed to a paper money judgment,

9    agreed to accept the $1 million payment by sentencing.

10          THE COURT:  In a way that if the $1 million is paid by

11   sentencing, the government will not seek the forfeiture of

12   anymore money from this defendant.

13          MR. SHAHABIAN:  Correct, your Honor.

14          THE COURT:  Does that agreement have any implications

15   for any other named defendant in the case?

16          MR. SHAHABIAN:  No, your Honor.

17          THE COURT:  So, to the extent that Mr. Bauer has

18   forfeited $1 million, that might be taken into account in the

19   amount, perhaps, due from others, but the fact that Mr. Bauer

20   has gotten relief from an amount over $1 million would not

21   reduce the forfeiture exposure of any other person.

22          MR. SHAHABIAN:  That's correct, your Honor.

23          THE COURT:  And so, back to you, Mr. Katz.

24          MR. KATZ:  Yes.

25          THE COURT:  I take it the point then being that you

OB4EBAUP

1    want the sentencing date to be set on a date when it's

2    realistic that Mr. Bauer can have, in fact, turned over the

3    $1 million.

4         MR. KATZ:  Correct.  We know that there is going to

5    be, I'll call it, a cash shortfall between the property that he

6    is forfeiting, the substitute assets that he is agreeing to

7    forfeit as part of the $1 million payment, and the $1 million.

8    So, there's going to be, call it, a few hundred thousand

9    dollars, and we'll know that with more certainty after the

10   appraisal of the substitute assets is completed, but it's going

11   to be in the range, likely, of $300,000.

12        As the government knows, my client does have

13   significant financial issues right now, and you can see that by

14   the consent motion that we filed as well on Friday afternoon.

15   And I think that rather than set a sentencing date in February

16   and have me repeatedly come to the Court asking for more time,

17   I've let Mr. Shahabian know that I'm going to be asking the

18   Court to set the sentencing date in May, potentially mid to

19   late May.  That's roughly six months from now.  Mr. Bauer has

20   already been sort of preparing for this and doing the work that

21   he's going to need to do over the next six months to make up

22   that shortfall, but that is the reason why I'm asking your

23   Honor to set the sentencing ——

24        THE COURT:  You're basically saying, just being a

25   realist, if I set it earlier, you're going to be seeking

OB4EBAUP

1    extensions.

2           MR. KATZ:  Yes, correct.  And I also don't want to put

3    Mr. Shahabian in the position of having to determine whether if

4    the sentencing date does occur and we're a little bit short,

5    what then.

6           THE COURT:  All right.  Look, I'm happy to accommodate

7    that if the government doesn't object.

8           MR. SHAHABIAN:  No objection, your Honor.

9           THE COURT:  I'm happy to accommodate it.  You've

10   recited a good reason.  But let's get it done by that date.

11          How about Tuesday, May the 20th, at 11:00 a.m.?

12          MR. KATZ:  That would work for me, your Honor.

13          THE COURT:  Mr. Shahabian, does that work for you?

14          MR. SHAHABIAN:  Yes, your Honor.

15          THE COURT:  All right.  I'll set sentencing down for

16   May the 20th at 11:00 a.m.  Defense submissions in connection

17   with sentencing are due two weeks before sentencing; the

18   government's submission is due one week before.

19          Notwithstanding the protracted sentencing process, I

20   will ask you, though, Mr. Katz, and particularly with your

21   client being in town right now, you should arrange for your

22   client to be interviewed by the probation department within the

23   next two weeks.  My suggestion is, while you're here, go see

24   them right after this proceeding.

25          Government, you should provide your case summary, no

OB4EBAUP

1   doubt assisted by Exhibit B, to the probation department within

2   the next two weeks.

3           MR. SHAHABIAN:  Yes, your Honor.

4           THE COURT:  Mr. Bauer, you must be in this courtroom

5   for sentencing at the time and date that has been set or you'll

6   be guilty of a separate crime called bail jumping and subject

7   to a fine and/or a prison term in addition to whatever sentence

8   you may receive for the crime to which you've just pled guilty.

9   Do you understand that?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  And let's take up the consent motion.

12          Mr. Katz, briefly, I've received your consent motion

13  at docket 39.  Briefly explain what the basis is for it.

14          MR. KATZ:  Yes, your Honor.

15          So, I'm happy to start with the travel conditions if

16  you'd like, your Honor.

17          THE COURT:  Yeah.  Just briefly.

18          MR. KATZ:  Yeah.  So, as your Honor knows, Mr. Bauer's

19  father passed away going on 18 months roughly, 17 months.  He

20  has not been able to visit his burial site.  His mother right

21  now is in Toronto as well.  He hasn't seen his mother for quite

22  some time, is my understanding.  He would like to travel to the

23  Toronto area to pay respects to his father's burial site,

24  engage in religious observance in tandem with that and see his

25  mother.  He has waived all of his extradition rights from the

OB4EBAUP

 1    UK.  Because he does not live in Canada, he has no extradition

 2    rights from Canada, so we deem this to be not any risk of

 3    flight.  I'm happy to engage a chaperon if necessary.

 4            THE COURT:  No, no.

 5            Government, you consent to all the modifications in

 6    Exhibit 39, correct?

 7            MR. SHAHABIAN:  Yes, your Honor.

 8            THE COURT:  All right.  Give me one moment.

 9            (Pause)

10            THE COURT:  And this was foreshadowed, I think,

11    Mr. Katz, by you at our prior conference.

12            MR. KATZ:  That's correct, your Honor.

13            THE COURT:  If all of these are consented to, I'm

14    happy to approve this.  I will sign the exhibit at 39 granted,

15    so the terms of pretrial release will continue to apply except

16    as modified here.

17            Look, Mr. Bauer, do you understand that all the

18    conditions on which you have been released up until now

19    continue to apply except to the extent they've been modified by

20    the consent motion for modification of those terms, and that if

21    you violate any of those conditions, that can have very serious

22    consequences for you at the time of sentencing?

23            THE DEFENDANT:  Yes, I do, your Honor.

24            THE COURT:  All right.  Look, I have absolutely no

25    reason to think that you're going to be other than fully

OB4EBAUP

```
1    compliant, I just need to advise you that where a defendant
2    does violate a condition of release in the period between a
3    plea and sentencing, it is invariably cited by the government
4    as an aggravating factor in connection with sentencing.  And
5    your violation of any condition like that can also subject you
6    to potential remand before sentencing.  Do you understand that?
7              THE DEFENDANT:  Yes, I do, your Honor.
8              THE COURT:  All right.  Look, from the bench, I'm
9    approving the consent motion but it'll also hit the docket
10   today.
11             MR. KATZ:  Thank you, your Honor.
12             THE COURT:  Is there anything further from the
13   government?
14             MR. SHAHABIAN:  Just, your Honor, in terms of the
15   allocution, that the defendant admit the forfeiture allegation
16   and the Court so order the consent preliminary order of
17   forfeiture that the parties have signed.
18             THE COURT:  I think I've indicated I've already signed
19   it.
20             MR. KATZ:  Yeah.
21             MR. SHAHABIAN:  Oh.  Sorry.
22             THE COURT:  Yeah.  No, I've already signed it.  It'll
23   hit the docket today.
24             MR. SHAHABIAN:  Then nothing else, your Honor, from
25   the government.
```

OB4EBAUP

1         THE COURT:  Anything further from the defense?

2         MR. KATZ:  Other than to say, your Honor, to the

3   extent there's a probation officer assigned, Mr. Bauer does

4   have a flight tomorrow.  I'm happy to go meet with them.  I'm

5   not sure that the entire interview could take place, but we'll

6   get him back here for another one as quickly as possible.

7         The other thing I will just say is that I will update

8   the Court on the appraisal of the substitute assets and what

9   that shortfall is going to be, just so there are no surprises

10  in terms of if I have to seek another short extension, but I

11  want the Court to know what the shortfall is that we're trying

12  to make up there.

13        THE COURT:  Look, I'm happy to know that.  I'm just

14  encouraging you, in pretty strong terms, to take advantage of

15  the flexibility that I'm giving.  Let's get it done by that

16  deadline if humanly possible.

17        MR. KATZ:  Yes, your Honor.

18        THE COURT:  All right.  Very good.

19        We stand adjourned.  Thank you.

20        And, Mr. Bauer, please wish your wife well.

21        THE DEFENDANT:  Thank you so much.  Thank you, your

22  Honor.

23        (Adjourned)

24

25